Robert Byer, representing the appellant Liberty Mutual, requests four minutes of rebuttal. The fundamental issue in this case is whether the district court erred under controlling Pennsylvania law in holding that a contract clause that uses the words condition precedent was not a condition precedent because it could have been expressed in stronger terms. This is a holding that is completely inconsistent with Pennsylvania law in the sense that no Pennsylvania case that anyone has cited to the court or that we have found has ever refused to consider as a condition precedent the clause that uses the words and denominates itself as a condition precedent, which we have in this case. The clause in question is referred to as a paid if paid clause. It is a feature of construction contracts and has the effect of sharing the credit risk as between the subcontractor and the general contractor on a on a project. Take us through the language that you think is significant here. Yes, Your Honor. You're in 6F? In paragraph 6F of the subcontract it states with respect to final payment that acceptance of final payment by subcontractor shall constitute a full and complete discharge and release of contractor and owner. And then it says final payment shall be made within 30 days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment. But isn't the Your Honor, it is not. The second part of 6F. There's notwithstanding anything to the contrary in this paragraph 6F? But there is nothing to the contrary in this situation. The second paragraph of 6F is a timing provision that refers to when a claim can be asserted by the subcontractor with respect to anything that remains. It uses the term remaining claim in the operative language. Subcontractor may pursue any remaining claim for final payment. What it says is notwithstanding anything to the contrary in this paragraph 6F, if within six months of the date that final payment is due to the contractor, the subcontractor has not received final payment for its work, subcontractor may pursue its claim against the contractor and the surety for final payment as follows. And why doesn't that, I'm going to come back to what is the definition of in effect go beyond just timing? No, Your Honor, because it still assumes the question of what is the final payment that is due. And the final payment with respect to any claims that remain after the pursuance of the dispute resolution procedure might be claims that do not involve any payment from the owner at all. For example, there could be a separate claim between the subcontractor and the general contractor if there were a dispute over the scope of work and there might be back charges that have to be resolved, that would be remaining. Or in a situation where perhaps if the owner had made the payment to the general contractor and the general contractor failed to provide the, or failed to pay the funds to the subcontractor at that point, that would be remaining. But the, there is nothing in this language that overrides the condition precedent that with respect to the sums that are due under the basic contract work. What does it mean notwithstanding anything to the contrary in this paragraph 6F? It would mean that if there is anything that could be read to the contrary, then, but it would not be a proper means of interpretation to use that to contradict the clear language of a condition precedent. That is not referring to, that language might be prefatory language dealing with the timing provisions with respect to, you know, other obligations under this. But again, it's taking out the remaining claims. I don't think you can separate that from the remaining claims language that follows and it's referring to. What is the definition of finally due to the subcontractor at the conclusion of the, of the contract and all dispute resolution provisions. But that can't be read again in isolation without respect to the condition precedent that payment be made by the contractor, to the, by the owner to the contractor in order to have an amount due to the subcontractor under this, under this agreement, which is consistent with a Pennsylvania statute that has been referred to as the CASPA, the Contractor and Subcontractors Payment Act, which itself provides for. This is a pretty, this is pretty simple English, but it seems like it's saying, not withstanding anything else in part one, if within six months the sub doesn't get final payment, the sub may make a claim against the contractor and the surety for final payment. And you just said final payment means the, the entire unpaid balance. The entire unpaid balance that would be due. Now in order to determine what is due to the sub, you can't read that apart from, in other words, this, this deals with the timing of the claim. Whether there is in fact a claim that the subcontractor can state has to be determined with reference to the condition preceding language. In the main, in the main contract, that is the contract between the owner and the contractor, shoemaker, the definition of the entire unpaid balance of the contract sum. So you're saying that in the subcontract, it is somehow different than that? In the subcontract, the only amounts that would be due, consistent with Pennsylvania law, and we can get into the case law on this, the only amounts that would be due. I'm just trying to get definitions. So you, the, the final payment means what in the subcontract? The final payment in the subcontract refers to the amounts that shoemaker would be obligated to pay to Sloan at the conclusion of the, of the contract. Doesn't, doesn't say that. I mean, I thought what you were going to tell me is that, yes, maybe there is a situation in subpart, second part of 6f that may override the first subpart, but the super override is paragraph 20. Well, I think you have to read it all together, and I do agree with that, that, that paragraph 20 refers to this. Which actually takes us back to Judge Sirica's opening question. Take us through the, the, the paragraphs here that are applicable and how they support your side. Paragraph 20 is a dispute resolution procedure that is incorporated into paragraph 6, 6f, and under this dispute resolution procedure, the, the general contractor here, shoemaker, is obligated to, or is entitled to present against the owner any claims for amounts that are due, including the claims of subcontractors as pass-through claims. And once those are resolved, and this paragraph 20, for example, gives complete discretion to the owner of certain additional obligations under the subcontract, once this is resolved, the subcontractor is bound by that resolution to the extent that claims are made by the general contractor on behalf of the subcontractor. The subcontractor also is required to bear a portion of that expense. But the basic, but reading these provisions together, the amount, any amount that's awarded under paragraph 20 would be credited against, or any amount awarded under paragraph 20 is the amount that the subcontractor would have to accept. And, and their argument on paragraph 20 is you didn't make a pass-through claim for them, is that correct? That is their argument, but that is not what the facts in the record show. The facts in the record show that the general contractor made a claim on behalf of the subcontractors. It attempted to pursue this through litigation, and it really litigated it to a standstill to the point where it became clear that nothing further could be paid. There was a settlement in the amount of $1 million. The, the owner defaulted on the second payment of that after the first $300,000, and that is where we are under Sloan's interpretation. This would entitle Sloan to recover more than Shoemaker recovered from the... Well, Shoemaker did a complete pass-through. They didn't, they didn't take anything out from... They didn't take anything out. There was, there was nothing that Shoemaker took. It passed everything through. This was just, just a bad deal. It's, it's a deal that went bad from everybody's standpoint, but the purpose of these clauses is to share that risk. Now, here what we have is Sloan attempting to put that risk entirely back on Shoemaker without any reduction in the that Sloan charged to Shoemaker. These are sophisticated contractors. These are sophisticated parties. They... The, the, the principal brief says at page 30, Sloan negotiated a higher price because it accepted the risk of owner's non-payment. Where, where's the support and record that they negotiated a higher price? That is typically the way these deals are negotiated. Under CASFA, the payment terms are disclosed, and this was an exhibit to the, I believe it was exhibit D to the subcontract. Those payment terms are disclosed. The subcontractor is aware of that, and presumably this is how parties negotiate their bids. Presumably. You don't know that they paid a higher price for that reason, or, or, or demanded a higher price, I should say. Well, I think that that would probably be, I think it's a reasonable assumption based upon the economic realities of these transactions, that this is something that they would take into account in, in determining what to charge. But there is not anything specific in the summary judgment record dealing with that aspect of the negotiation. That's correct, Judge Van Aske. The, what is the standard risk allocation in the industry, normally? Well, in Pennsylvania, the standard risk allocation is a pay-if-paid provision after CASFA. And the Pennsylvania courts have uniformly, have considered this issue, have uniformly interpreted it as creating a pay-if-paid. The statute overrides the private, you know, let's say the parties were clear in their contract that it's going to be a pay-when-paid as opposed to pay-if-paid, but the statute overrides their negotiated contract? The statute, the statutory language, I think, would convert what may be under prior law could have been considered to be a pay-when-paid provision. For example, the United Pay, United Plate Glass case that has been cited, the statute would convert that to a pay-if-paid provision. Now, I haven't seen a case where parties expressly provide in their contract that this is to be interpreted as a pay-when-paid provision, not a pay-if-paid provision. That issue has not come up. I could see arguments on both sides of that as to whether you could override that provision of the statute. Some aspects of the statute cannot be overridden. The statute is silent with respect to others. Isn't the purpose of the bond to protect someone like Sloan because they waived their mechanic lien? The purpose of the bond is actually to protect the owner against mechanics liens. Sloan is a third-party beneficiary of the bond, but the bond is written as a tripartite agreement among the owner and the general contractor and the surety. But the surety stands in the same position as, in this case, Shoemaker, rather than a... It's not an insurance... But if you have a mechanics lien, you can go for the whole shooting match, right? If there's a mechanics lien, you can go for the amount that... all amounts that would be owed to the subcontractor. So if you're going to give that up, why would you give that up for a surety bond that gives you something significantly less? That doesn't make a whole lot of sense if you're a sub. Well, the surety bond gives you everything that you're entitled to recover from the subcontractor. It is... or from the general contractor. The mechanics lien would not give you a greater right to payment than you have under the contract between the owner and... between the general contractor and the subcontractor. Go ahead. So in effect, it's a... you give up the mechanics lien for purpose... for getting the subcontract. And what you get with a subcontract is a surety bond that says whatever it says. Well, the surety bond basically has the same obligation as under the subcontract. Okay. So, I have no further questions. With respect to the case law, we've cited the cases in our brief, but there is no Pennsylvania case that has ever determined that a clause with a condition precedent language in it is not a condition precedent. The cases that we think are very close to this case, for example, the C.M. Eichenlaub case in the Pennsylvania Superior Court, the opinion by Judge Du Bois in the LBL Sky Systems case, all involve language that's very similar to the language involved in this case. The LBL Sky Systems case, also Judge Du Bois accepted the argument that CASPA also must be interpreted as applying a pay-if-paid provision here. And that's consistent with Pennsylvania law in the Capelli case that we've cited, as well as the Eschbach case. For purposes of penalties, it's a pay-if-pay. I'm sorry, Your Honor. I'm sorry. Capelli said that for purposes of penalties, it's a pay-if-pay. Yes, that was the issue before the court, but Judge Du Bois read Capelli the same way we do, as going further. And the trial court opinion in Eschbach is to the same effect. The Superior Court opinion in Eschbach held that, well, because this is a condition precedent with language similar to that in this case, it did not have to reach the statutory question. Any other? Good. Mr. Beyer, thank you very much. Thank you. We'll have you back. Mr. Garcia? Morning. Thank you. Good morning. My name is Rudy Garcia. I represent the plaintiff below, Salomon Company. I think I will not dwell on the facts, since the court obviously has a very good handle on that. But I'll jump right into the Paragraph 6F language, because I think that's what controls the largest issue. Why isn't Mr. Beyer right about the second half? Not at all, Your Honor. Essentially, what Paragraph 6F does is direct the litigation traffic. It starts out saying, stop subcontractor. It waves the general contractor through with its claim against the owner. Once that's out of the way, it says, okay, now it's your turn. You can sue the contractor or the surety. Let's assume you're right on 6F, that second part. It overrides the first part, so that Sloan has not received final payment, which is, I think, is the entire unpaid balance of a subcontract. Sloan may pursue its claim against Shoemaker and the surety for final payment. All it has is a claim. Then isn't that claim subject to a super override in Paragraph 20, that if they take your claim and present it as part of the package to the owner, you're bound by that? No, because Paragraph 20 has nothing to do with this case. Paragraph 20 is an alternative procedure. Well, it says nothing in subparagraph 6F is intended to modify the provisions of Paragraph 20. That's right. That's a backhanded way of saying Paragraph 20 is a super override. No, if Paragraph 20 is used. Paragraph 20 provides an alternate procedure. During the course of the construction, if the contractor isn't sure whether it should pay the subcontractor for some work it's done, the contractor has the option of submitting that question to the owner. And then the owner can make a decision. Yes, you're entitled to payment, or no, you're not. And the subcontractor is bound by that. And Shoemaker did present to the owner the full contract that it got. Shoemaker never did that in this case. Shoemaker never presented any claim by Sloan to the owner for the owner to make a decision. What was the amount of the claim that Shoemaker made against the owner? No, what Shoemaker did was sue. What was the amount that it claimed? Shoemaker sued for everything that was owed to Shoemaker, for its own invoices. And what was owed to Shoemaker included over a million dollars roughly that was owed to Sloan, right? Not really. If Shoemaker had received its payment, then presumably it would have taken some of that money and satisfied its own obligation to Sloan. But that's different than saying that Shoemaker was suing on Sloan's behalf. Shoemaker had the obligation to pay Sloan either way. Shoemaker was attempting to recover its own money. Shoemaker, if this deal went through and everybody got paid, Shoemaker made what, about a million and a half profit, is that right? That's about right. Five million to six and a half. If Shoemaker sued for a million and a half, you might be right. But it sued for what? The full amount that was remaining, correct? Shoemaker sued for its own invoices. If you look at the complaint by Shoemaker against the owner, it never even mentioned Sloan. But its own invoices, for example, would include 90 percent of what would be due the subs, with a 10 percent retainage put off to the side, right? Shoemaker, part of Shoemaker's payment that it's owed by the owner is dependent on how much Shoemaker owes to subs. That's correct. But the key distinction is that Shoemaker was suing for its own invoices. It was not asserting a claim on behalf of Sloan. And it never asserted that claim to the owner for the owner to decide, which is what paragraph 20 is about. Under paragraph 20, essentially the owner acts like an arbitrator. But paragraph 20 says also, in the event the subcontractor asserts a claim for payment of the subcontract sum or a portion thereof, and in the event that the contractor in its sole and exclusive discretion submits subcontractor's claim to the owner for a decision or determination, then all decisions and determinations made by the owner or its representative shall be binding on the subcontractor. Precisely, and that never happened. But as a practical matter, how were they submitting only their own claim and not the claims of the subs? I think there's two different issues here, and it gets confusing if they're mixed. One issue is, did Shoemaker opt to use the procedure under paragraph 20? The answer to that is clearly no. Shoemaker never asked the owner to make a determination about whether Sloan should be paid or shouldn't be paid for a particular invoice. If it had, then the contractor had an option, if the owner said no, to essentially appeal that to a court. That's the paragraph 20 procedure, and that never happened. But if Shoemaker's keeping no fees for itself in the end here, who's it suing for? What did it settle with or for? If the contractor, first of all, has not passed through a dime to Sloan, it's getting paid, what, about $300,000 so far of the million that was owed? The contractor spent $3 million pursuing the owner in order to recover $300,000. And then it said, now Sloan, you have to settle for a piece of that $300,000, and you have to pay us a share of the $3 million in counsel fees. What is the industry standard? What is the custom and usage in the industry with regard to when subs get paid? Subs are entitled to be paid for the work they do. And unless the contract shifts the risk of an owner's default to the sub, that's the way it is. The sub's entitled to be paid 100 cents on the dollar for whatever it earned. If it has a mechanics lien, perhaps. And under CASPA. That was not a correct statement of CASPA. If you look at CASPA, there are two provisions. It starts out in section 507A, saying that the contractor is entitled to be paid for its work. And then the part that they look at is 507C, which is titled time of payment. And it says when you're supposed to get paid. That's a pay when paid structure, not a pay if paid structure. It's similar to Sloan's contract in that it deals with the timing of when you're paid in the ordinary course. It doesn't say if the contractor never gets paid, you never get paid. That's what the contract would have to say. And it didn't in this case. Instead, it said give the contractor a chance to get what it can first. And once that's finished, then it's your turn. And you're entitled to sue for your final payment, which is the whole amount you wrote. Now, you decide that it's pay if paid or pay when paid, looking at what? The first part of 6F? I think you look at the entire 6F. Judge Schiller below concluded that even the first part was only pay when paid. He never even got to the nevertheless language. Notwithstanding, yeah. But when you look at the nevertheless language, it's clear as can be that that overrides the first part that makes it a condition precedent. So there's a number of ways you can describe this, but essentially what happens is there's a condition precedent which is temporary. And if the owner gets paid, if the owner pays the contractor, that's as far as you need to go. The contractor then pays the subcontractor. But if the owner doesn't pay the contractor, then you get to the nevertheless language to see how that plays out. And instead of saying, Sloan, you've got the risk of nonpayment, it says, Sloan, you have to wait and let the contractor go first. And that's all it says. And it did sue within six months, did it not?  Then once the contractor's case against the owner was resolved, Sloan pressed forward with its case and said, okay, we're allowed to get our final payment now. And the court agreed. So your argument is that paragraph 20 has nothing to do with any of this because the contractor did not, in effect, make the claim for you against the owner, or make the claim for you for your subcontract sum. Even a little further than that, because what paragraph 20 says is if there's a dispute between the contractor and the subcontractor, the owner can decide it. It's a dispute resolution procedure, like an arbitration. The owner makes the determination whether Sloan should be paid or not. The contractor here never asked the owner to make a determination about whether Sloan should be paid. What they're confusing with that is a separate case that the contractor brought to recover its own amounts from the owner that never even mentioned Sloan. And the complaint wouldn't answer. So how do the terms remaining payment and final payment, how do we define those? I think final payment means the payment that you get when you're finished. Within the contract, there are progress payments and then there are final payments. And at the end, when you've done all the work, the final payment includes amounts held back during the course of the project, 10%, and it includes any final invoices. It's the full amount. And so what this says is that once the contractor's case is finished, the contractor may pursue any remaining claim for final payment. So if it still has a claim for final payment, it can pursue it. It might not have a claim anymore for final payment if it's already been paid because the contractor sued the owner, got the money, and paid Sloan. But that didn't happen here. There are a couple other issues in this case that I'd like to at least briefly touch on, unless the court has additional questions on this, because this is clearly the most important. One is whether the contract required Sloan to pay for attorney's fees. And again, on that, it relates purely to paragraph 20, which is not the procedure that was used. If the contractor had asked the owner to decide a claim, then it says under paragraph 20, the expense of that would be borne by Sloan. But again, that's not what happened here. That never happened. And even if it had happened, all that they're entitled to is the expense, which under Pennsylvania law does not include attorney's fees. Also, on the cross-appeal, this bond contained a provision that said within 45 days, the surety has to say to the claimant how much of the claim is undisputed and pay the undisputed amount. And it has to state the reasons for disputing any disputed amount. In this case, what Liberty Mutual did was say, we're disputing the whole thing solely because of this paragraph 6 provision, which they're characterizing as pay if paid, but we think is really pay when paid. That was the sole reason they gave. But they reserved their rights, or purported to reserve their rights. Purported is the key there, because they didn't have a right to reserve. They had to say whatever the reasons were within the 45 days. Then two years later, when we're briefing the summary judgment motion, they come up with several additional claims for deductions that had never been raised before. That would make a mockery of this 45-day provision if a surety were allowed to wait and add additional grounds two years later when it had 45 days to state the reasons. So for that reason, we think that the court should have granted summary judgment for the entire amount at the outset, rather than just for the undisputed amount. Which then led to a discovery, a second summary judgment for a portion of the undisputed amount, and then ultimately a resolution of the part that was still in dispute in a way to preserve the issues for this appeal. So what we think the court should do is essentially substitute what happened below a new judgment for the entire amount, plus 6% interest as required under Pennsylvania law, from the date that the 45-day deadline expired, because that's when it should have been paid. I unfortunately will not be able to reserve time for a rebuttal, I understand, so I'm going to have to rely on my briefs for anything else that they may raise in their rebuttal. Are there any other questions? I think the court understands the issues. Good, I think we do. Thank you very much, Mr. Garcia. Thank you. Mr. Beyer? Yes, Your Honors, I will be brief. One question I've got for you is that when you look at paragraph 20, it talks about in the event that the subcontractor asserts a claim, and in the event that the contractor in its discretion submits that claim to the owner for decision determination, that all decisions and determinations made by the owner or its representative are binding. Well, in this case, can you really say the owner made a determination? I guess it was a settlement, maybe it was a determination, but it seems like paragraph 20 may be dealing with a different situation than what we have here. Well, paragraph 20 begins by saying that all claims, disputes, or other matters arising out of or related to the subcontract shall at the sole discretion of the contractor be decided by arbitration or litigation. It references the ability of the contractor to file suit. Again, we have to read these provisions together, and there's nothing in the second part of paragraph 20 that deals with determinations of owners that would require that this be done outside of the litigation process. Was there ever a determination made by the owner in this case that Sloan is entitled to only 50% or was entitled to nothing because of the nature of the work that was done? The record shows that as part of, I believe, as part of the litigation process as this got into the dispute, the owner did complain about a couple of items of Sloan's performance. There was a reference in the record, and we cover this in the briefs, at one point the owner referred to certain bad actors among the subcontractors, and he identified Sloan as one of them on a very narrow point. But we're talking about a very small amount of the claim here, Your Honor. What the record does show, the complaint is in the record that Shoemaker had filed against the owner at page A759 of the appendix. And the summary judgment record shows through the declaration of Mr. Ball at pages 992 through 993 of the appendix that the lawsuit sought a total of $6,485,496. Of that amount, Sloan's claim, the claim that was attributable to Sloan's work was 1 million, I'm sorry, the amount attributable to Shoemaker that Shoemaker was claiming for its own was $1,500,000. The rest of it related to subs. And the complaint is clear. It's suing for all of the work that was done. Had to be for subs. It had to be for subs. This was a classic pass-through that was finally settled. And again, Shoemaker received no part of that settlement. With respect to the 45-day provision, this is an issue that is of great concern to the surety industry. But I will say that if we look at paragraph 6 of the surety bond, paragraph 6 is the provision in question. And it says basically that when a claim is made on the bond, as happened here by Sloan, two things have to occur. That the surety either has to stay, you know, what portions of the claim it's objecting to and provide a letter. And then the rest of it is paid. Here, the surety, Liberty Mutual, says we object to all, the entirety of the claim because of the pay-if-paid provision. There's no amount that is due. So the purpose of the 45-day provision was satisfied. There is nothing in the language of this bond and nothing in Pennsylvania law that would result in a forfeiture of defenses. Any other questions? The case was extremely well-argued by both sides. We thank counsel and we will take the case under advisement. Thank you, Your Honors.